Weaver, J.
(concurring). I concur in the majority’s reversal of the decision of the Court of Appeals. Larry Heier, the putative father, does not have standing to intervene in this child protective proceeding because there is no previous determination by the circuit court that CAW was bom out of wedlock. I write separately because the majority’s statement that it is “more comfortable with the law as currently written,” ante at 199, lacks any force in the resolution of this case. Consideration and rejection of the Court of Appeals reasoning provides a better approach to, and context for, understanding why a putative father does not have standing to intervene in a child protective proceeding unless the circuit court has previously determined that the child was bom out of wedlock.
The juvenile-code provisions addressing child protective proceedings do not list putative fathers among the individuals who must be served with notice.[1] The Michigan Court Rules, however, do afford the court the discretion under defined circumstances to order that notice be served on a putative father. MCR *201 5.921(D) provides, “[i]f, at any time during the pendency of a proceeding, the court determines that the minor has no father as defined in MCR 5.903(A)(4), the court may, in its discretion, take appropriate action as described in this subrule.”[2]
A threshold requirement of MCR 5.291(D), before notice may be served on a putative father, is a determination by the court that the minor has no father as defined by MCR 5.903(A)(4). In pertinent part, MCR 5.903(A)(4) defines a “father” as “a man married to the mother at any time from a minor’s conception to birth unless the minor is determined to be a child bom out of wedlock . . . .” MCR 5.903(A)(1) defines a “child born out of wedlock” as
a child conceived and bom to a woman who is unmarried from the conception to the birth of the child, or a child determined by judicial notice or otherwise to have been conceived or bom dining a marriage but who is not the issue of that marriage.
This Court has not addressed the standing of a putative father in light of this court rule.
In Girard v Wagenmaker, 437 Mich 231, 242-243; 470 NW2d 372 (1991), however, this Court interpreted a similarly worded definition of “child bom out of wedlock” to determine whether, and when, a putative father had standing to file a complaint pursuant to *202 Michigan’s Paternity Act, MCL 722.711 et seq. The act defines in part “child bom out of wedlock” as a child that “the court has determined to be a child bom or conceived during a marriage but not an issue of that marriage.” MCL 722.711(a). Girard, supra at 242 (citations omitted) reasoned:
“[H]as determined” is the present perfect tense of the verb “determine.” The present perfect tense generally “indicates action that was started in the past and has recently been completed or is continuing up to the present time”
Girard held that, under the plain terms of the Paternity Act, a putative father did not have standing “to establish paternity of a child bom while the mother was legally married to another man without a prior determination that the mother’s husband is not the father.” Girard, supra at 235. Girard grounded its literal reading of the statute in the fact that it comported with “the traditional preference for respecting the presumed legitimacy of a child bom during marriage.” Id. at 246, citing Serafin v Serafin, 401 Mich 629, 636; 258 NW2d 461 (1977).
The majority of the Court of Appeals attempted to distinguish Girard, concluding that the definition of “child born out of wedlock” in MCR 5.903 is “less restrictive” than the Paternity Act definition. 253 Mich App 637. However, the definition of “child bom out of wedlock” in MCR 5.903(A)(1) varies from the definition of the same term in the Paternity Act only in its additional provision that a child may be determined to be bom out of wedlock “by judicial notice or otherwise” and in its use of the past tense of the verb “to *203 determine,” rather than the present perfect tense of that verb.
The provision that the determination may be made by judicial notice does not affect when the determination must be made in order to permit standing. Moreover, the use of the past tense makes even clearer the fact that the determination must be made by the court before a putative father may be accorded standing in a child protective proceeding. Because Weber was married to Rivard from the time of conception to the birth of CAW, and because CAW was not “determined by judicial notice or otherwise to have been conceived or bom during a marriage but . . . not the issue of that marriage” pursuant to MCR 5.903(A)(1),[3] the provisions for notice to a putative father in MCR 5.921(D) were not applicable.[4]
For these reasons, I concur in the result of the majority opinion. I also concur in the remand to the Court of Appeals to address Heier’s argument that the standing requirements deny him due process of law by depriving him of an alleged established parental relationship with CAW.

 MCL 712A.19(5) and MCL 712A.19b(2).

 If it is determined that the minor child has no “father” as that term is defined by the court rules, then MCR 5.921(D)(1) provides:
The court may take initial testimony on the tentative identity and address of the natural father. If the court finds probable cause to believe that an identifiable person is the natural father of the minor, the court shall direct that notice be served on that person

 Recent amendments to. MCR 5.903, issued February 4, 2003, were effective May 1, 2003 as MCR 3.903.

 The Court of Appeals also premised its reversal of the family division of the circuit court’s denial of Heier’s motion to intervene in part on the tennination of Rivard’s parental rights. 253 Mich App 640. While purporting to rely on the court rules, the Court of Appeals majority actually contradicts them. The authority of the family division of the circuit court to determine the rights of a putative father derives from a determination that a child was bom out of wedlock, not the termination of the legal father’s rights.